# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 20-10028-11,15,19-EFM

KEVIN LEWIS, *et al.*,

    *Defendants.*

## MEMORANDUM AND ORDER

    Before the Court is Defendant Orlando Hogan's motion, joined by Defendants Armando Luna, Kevin Lewis, Travis Vontress, and Otis Ponds, to Compel Production of the Identity of Confidential Sources of Information (Doc. 550).[1]  The Government, in the course of its investigation into the 24 Defendants originally charged in this case, turned to four confidential sources of information for various tips and tasks.  The Government has refused to reveal the identities of these sources, and the above-named Defendants now ask the Court to compel the Government to do so.  The Court held a hearing on this motion on February 11, 2022.  For the reasons discussed below, the Court denies Defendant's motion.

---

[1] Both Hogan and Luna have now pled guilty in this matter and have withdrawn this motion with respect to themselves.  It remains active for the remaining Defendants mentioned above.

### I.     Factual and Procedural Background

The Government used four confidential sources during the investigation into Defendants' alleged drug trafficking activities. Three of these are what the Government calls "SOIs," or Sources of Information. SOI-1 provided investigators with a tip that Kevin Lewis was Dorzee Hill's source of supply for heroin, and this tip was included in FBI Special Agent Cameron Heath's affidavit in support of the Government's first wiretap application. SOI-1 also provided information on several other unindicted persons and co-Defendants who have already pled guilty in this matter. SOI-2 was incarcerated at the time he assisted law enforcement by providing what the Government calls "historical information" about Hill and his alleged drug trafficking organization. This information related only to co-Defendants who have already pled in this matter. SOI-3 provided information about Defendant Travis Knighten's access to cellphones while in prison, as well as information relating to Hogan and Travis Wells. Hogan's motion stresses that SOI-3's initial motivation for communicating with law enforcement was to receive leniency for pending charges, and that SOI-3 still provides information to investigators for financial compensation. The Government does not plan to call any of the SOIs as witnesses.

The Government also utilized a confidential human source ("CHS") in connection with several controlled narcotics purchases. These purchases were from Hill and two unindicted persons. No other Defendant was party to these deals, and the deals themselves are not part of the conduct charged by the Indictment or Superseding Indictment against any remaining Defendant. There is some suggestion that the CHS provided information regarding the slang terms used in drug transactions, as well as corroborated Otis Ponds' phone number. The CHS also provided information about other Defendants that have since pled guilty. Again, the Government does not anticipate that it will call the CHS to testify at trial.

-3-

## II. Analysis

Defendants ask the Court to compel the Government to reveal the identity of these four persons. The Government, in response, contends that (1) its discovery obligations do not require it to disclose the names of its confidential informants, and (2) the informer's privilege protects against such disclosure. The Court examines each in turn.

### A. Rule 16 and the Jencks Act

The Government first relies on the Federal Rules of Criminal Procedure and the Jencks Act to contend that it is not required to disclose the identity of its CSIs at this time. It reminds that Court that Rule 16 does not "authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."[2] That statute, also known as the Jencks Act, protects witness statements from discovery until after the witness has testified on direct examination.[3] But none of this answers the question of what must happen when the defendants seek production of the *identity*, not the statements, of persons who will *not* be called as government witnesses. To answer that question, the Court must turn to the so-called informer's privilege.

### B. Informer's Privilege

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law."[4] The Supreme Court has reasoned that this privilege, by allowing persons to remain anonymous, encourages them to aid law enforcement

---

[2] Fed. R. Crim. P. 16(a)(2).

[3] 18 U.S.C. § 3500(a).

[4] *Roviaro v. United States*, 353 U.S. 53, 59 (1957) (citations omitted).

by sharing their knowledge of criminal activity.[5]  But the privilege is not absolute.  It must give way where "the disclosure of an informer's identity, or of the contents of his communication, is *relevant and helpful* to the defense of an accused, or is essential to a fair determination of a cause."[6]

Determining whether the privilege protects against disclosure ultimately requires balancing "the informant's level of participation in the illegal activity for which the criminal charges are brought and the probative value of the informant's probable testimony."[7]  This balancing results in a spectrum of different situations:

> At one extreme are the cases where the informant is a mere tipster, and disclosure is not required. At the other extreme are cases such as *Roviaro* itself where the informant has played a crucial role in the alleged criminal transaction, and disclosure and production of the informant are required to ensure a fair trial. In addition, there are cases where there is a slight possibility a defendant might benefit from disclosure, but the government has demonstrated a compelling need to protect its informant.[8]

A defendant seeking disclosure of a confidential informant's identity bears the burden of showing that his need for the information outweighs the public interest in nondisclosure.[9]  "Mere speculation" is not sufficient to meet this burden.[10]  Rather, "[t]he defendant must explain to the court as precisely as possible what testimony he thinks the informer could give and how this testimony would be relevant to a material issue of guilt or innocence."[11]

---

[5] *Id.*

[6] *Id.* at 60–61 (emphasis added).

[7] *United States v. Wilson*, 899 F. Supp. 521, 523 (D. Kan. 1995) (citations omitted).

[8] *United States v. Martinez*, 979 F.2d 1424, 1426 (10th Cir. 1992) (quoting *United States v. Moralez*, 908 F.2d 565, 568 (10th Cir. 1990)).

[9] *Id.* (citing *Rovario*, 353 U.S. at 59).

[10] *Moralez*, 908 F.2d at 567. "The confidential informant privilege will not yield to permit a mere fishing expedition, nor upon bare speculation that the information may possibly prove useful." *United States v. Valles*, 41 F.3d 355, 358 (7th Cir. 1994) (internal quotation omitted).

[11] *United States v. Logan*, 241 F. Supp. 2d 1164, 1175 (D. Kan. 2002) (quoting *United States v. Blevins*, 960 F.2d 1252, 1259 (4th Cir. 1992))

The three SOIs in this case are clearly at the non-disclosure end of the spectrum. Each fits comfortably within the description of a "mere tipster," as each was only involved in this matter by way of providing information to the government investigators. Largely, this information did not even involve any of the remaining movants; SOI-1 was the only one to provide information about one of the movants, Kevin Lewis, and this information was in the form of a tip that Lewis was Hill's supplier. It seems beyond likely, then, that the SOIs, if identified, would not have information helpful to the defense, as they were "not present during commission of the offense, and cannot provide any evidence that is not cumulative or exculpatory."[12]

Unlike the SOIs, the CHS did more than just pass information in this case. The CHS was involved in several controlled buys from Defendant Hill and other non-indicted persons. But none of these transactions were part of the conduct charged in the Indictment or Superseding Indictment. Further, none of these transactions involved the Defendants now seeking the identity of the CHS. Accordingly, though the CHS did participate in criminal activity at the behest of law enforcement, the CHS had no "participation in the illegal activity *for which the criminal charges are brought*."[13]

At the hearing on this matter, Defendants argued that because the CHS provided information to the Government investigators, in the form of identification of drug slang terms and corroborating Otis Ponds' phone number, his or her identity should be revealed to permit Defendants to assure themselves that the CHS did not provide false information out of some malicious designs against Defendants. This is ultimately no more than a "fishing expedition,"[14]

---

[12] *United States v. Gordon*, 173 F.3d 761, 767 (10th Cir. 1999) (citations omitted).

[13] *Wilson*, 899 F. Supp. at 523.

[14] "The confidential informant privilege will not yield to permit a mere fishing expedition, nor upon bare speculation that the information may possibly prove useful." *Valles*, 41 F.3d at 358 (internal quotation omitted).

as there is absolutely no evidence of such bias.[15]  But even were the CHS proved to be biased against Defendants, they do not persuade the Court that any testimony from the CHS on the slang or phone number would be at all helpful to their defense.[16]  Even if the CHS provided false information as to the meaning of drug slang terms or Otis Ponds' phone number, this revelation would ultimately come to nothing as the Government has verified the meaning of drug slangs and Ponds' phone number through many independent ways.  Much of the motions hearing in this case involved inquiry of the Government's proposed drug experts, who testified at length as to their vast experience with slang terms in drug transactions.  The Government also corroborated Ponds' phone number in a variety of ways.  As such, Defendants have not identified how this proposed testimony from the CHS would be at all helpful to their defense.

The Court is also required to balance the public interest in nondisclosure of the identities of the informants.  The Government contends that interest is great in this case, as there have been credible fears that some Defendants and their associates, some of whom are believed to be members of the Junior Boys street gang, would take action against persons perceived to be "snitches."  There has been no evidence provided on that score, but the Court still finds the safety concerns at least somewhat compelling as a number of the Defendants in this case have a history of violent crime.  Ultimately, Defendants have failed to meet their burden of showing the need for the identities of the CHS and SOIs outweighs the public interest in nondisclosure.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Production of the Identities of Confidential Sources of Information (Doc. 550) is **DENIED.**

---

[15] Defendants', to meet their burden, must supply more than "mere speculation."  *Moralez*, 908 F.2d at 567.

[16] Defendants, to meet their burden, must "explain to the court as precisely as possible what testimony he thinks the informer could give and how this testimony would be relevant to a material issue of guilt or innocence." *Logan*, 241 F. Supp. 2d at 1175 (quoting *Blevins*, 960 F.2d at 1259).

**IT IS SO ORDERED.**

Dated this 15th day of February, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE